KING, Circuit Judge:
Defendants-appellants Luther Richardson, Jr. (Richardson) and Michael Wayne Boudreaux (Boudreaux) pleaded guilty to certain charges stemming from a conspiracy to launder money. Boudreaux pleaded guilty to conspiracy to launder monetary instruments, in violation of 18 U.S.C. §§ 1956(a)(3), 2, and 371. Richardson pleaded guilty both to conspiracy to launder monetary instruments, in violation of 18 U.S.C. §§ 1956(a)(3) and 371, and to being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).
On appeal, both Richardson and Bou-dreaux challenge their sentences under the United States Sentencing Guidelines (Guidelines). Richardson contends that the district court erred in several respects. First, he challenges the district court’s failure to reduce his sentence for his role as a minimal or minor participant in the conspiracy. Second, he contests the district court’s assessment of a three-level enhancement of his sentence based upon the amount of money laundered (or in the process of being laundered) as part of the conspiracy. He contends that (a) in the first of two laundering transactions involving Richardson, he did not know that the funds were illegitimate; and (b) in the second transaction, Richardson neither touched the money nor intended to launder it.[1] He also raises a constitutional claim based upon the fact that the amount of money was arbitrarily designated by the government. Finally, he asserts that the district court erred by failing to articulate its reasons for giving the maximum forty-six month sentence when probation had recommended a thirty-six month sentence.[2]
Boudreaux contends that the district court erred in its imposition of his sentence, by enhancing the sentence according to the amount of funds laundered when that amount was directly controlled by the government. Elaborating on the argument raised by Richardson, he contends that the government’s ability to manipulate the amount of money in a “sting” operation should preclude its reliance on that amount to ratchet up a criminal sentence. He argues that such a practice violates constitutional requirements of due process and separation of powers.
We find that the district court did not err in its factual findings or its application of the Guidelines to those factual findings. We also find no constitutional violations in this case. Accordingly, we affirm.
I.
With regard to Richardson’s first argument, we note at the outset that findings as to a defendant’s role in an offense are factual, and are governed by the clearly erroneous standard of review. United States v. Mejia-Orosco, 867 F.2d 216, 221 (5th Cir.) (Guideline “[s]ection[] 3B1.2 (requiring the judge to decide whether the defendant was a ‘minimal participant’ or ‘minor participant’) ... will ... enjoy the protection of the ‘clearly erroneous’ standard.”), reh'g denied, 868 F.2d 807 (5th Cir.), cert. denied, - U.S. -, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).
Richardson argues that he acted as *115 a minor participant in the conspiracy.[3] According to the evidence submitted at trial, Richardson was sent by co-conspirator Joseph E. Fryar (Fryar) to pick up some money from individuals later discovered to be government agents conducting a “sting” operation. In a telephone conversation with one of the agents prior to the meeting, Fryar referred to Richardson as being “just a runner for me,” and stated, moreover, that Richardson was “not an Einstein, he is not too big a one, he just does this for me.” Richardson points, moreover, to the affidavit of Boudreaux, which describes the conspiracy in great detail and only mentions Richardson briefly, at the very end, stating that Richardson was to drive to New Orleans to pick up some money and that he was connected with Fryar.
In addition to this evidence, however, the district court reviewed, inter alia, the transcript of a video-taped meeting between Richardson and undercover agents, during which Richardson engaged in a lengthy discussion with the agents about methods of laundering drug money utilizing domestic and foreign bank accounts. We find that the district court could reasonably have inferred, on the basis of these discussions, that Richardson, in fact, played a major role in the laundering conspiracy, and demonstrated a genuine knowledge about and degree of participation in the conspiracy. Moreover, although the pre-sentence report (PSI) “reluctantly agree[d]” that Richardson’s role in the conspiracy was minor,[4] some of the PSPs findings do indeed support the judge’s contrary conclusion. For example, the PSI found that “[t]he defendant’s actions were more than that of a mere runner,” “Richardson’s knowledge of laundering is evident,” and “[t]he defendant has sufficient knowledge of laundering activities to ‘sell himself’ as instructed. He came to New Orleans, Louisiana, on two occasions and represented himself as a willing participant in the laundering operation.” We find adequate evidence in the record to support the district court’s conclusion that Richardson did not play a minor role in the conspiracy.
II.
The second issue raised by Richardson on appeal is whether the district court erred in assessing a three-level enhancement for the amount of money laundered (or in the process of being laundered) during the course of the conspiracy.[5] The Guidelines state that if the value of the funds exceeds $100,000 in a money laundering offense, the offense level should be increased correspondingly.[6] Because the district court found that Richardson was engaged in the laundering of $450,000,[7] and *116 the stipulated increase for a value of funds exceeding $350,000 is three levels, U.S.S.G. § 2Sl.l(b)(2), Richardson’s sentence was increased by three levels. We review the district court’s finding that Richardson was engaged in the laundering of $450,000 for clear error.
A.
As to the first transaction in which he laundered $225,000,[8] Richardson contends that he believed the money belonged to Fryar rather than being proceeds of illegal activities. However, by his own admission, Richardson later became aware that the original $225,000 had been laundered.[9] Even if Richardson did not conspire to launder the original $225,000, the Guidelines strongly suggest that a defendant can be held accountable for acts of a conspiracy prior to his joining, “if those acts were ... reasonably foreseeable in connection with ... the criminal activity he agreed to jointly undertake_” [10] Therefore, even if Richardson did not know at the time that the initial transaction was illegal, his knowledge of its illegality at the time he agreed to engage in the second money laundering transaction rendered the initial transaction relevant conduct under the Guidelines.
B.
As to the additional $225,000 that the agents produced during the “sting” operation,[11] he argues that (1) he never touched the money and (2) he never intended to launder it, but rather intended to “rip off” the agents.
Contrary to Richardson’s assertions, the district court found that Richardson did indeed intend to launder the money. The fact that Richardson had not yet touched the money does not exclude it from being relevant conduct, particularly since he “counseled, commanded, induced, procured, or willfully caused” the production of the money through his participation in the April 13 meeting.[12] His intention to take the money was manifest in his arrival at the scene of the “sting” with a valise for the transport of the money and a loaded 9 millimeter pistol to protect the money. Although Richardson had not yet touched the money prior to his arrest, a co-conspirator, Leo Fontenot, who had accompanied Richardson to the meeting, had fully counted the money, placed it in the valise, closed the valise, and placed it near Richardson. His extensive discussions with the government agents regarding his laundering expertise provides an adequate basis for the district court’s conclusion that he did intend to launder the money. We find, therefore, that the district court did not err in sentencing Richardson based on a money laundering scheme involving a total of $450,000.
*117 in.
Richardson also contends that the trial court erred in assessing the maximum 46 months under the Guidelines, with no articulated reason, when the United States Probation Office recommended only 36 months. Following the reasoning in United States v. Ehret, 885 F.2d 441 (8th Cir.1989), cert. denied, — U.S. —, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990), we find that when the spread of an applicable Guideline range is less than 24 months, the district court is not required to state its reasons for imposing a sentence at a particular point within the applicable range.[13] Therefore, because the Guideline range for Richardson was between 37 and 46 months, with a spread of 9 months, the judge was not required to state his reasons for imposing a sentence at the top of the Guideline range.
IV.
We turn, finally, to the constitutional issues raised by both Richardson and Boudreaux.[14] Boudreaux argues that under the Guidelines, the power of the executive branch to determine a defendant’s sentence based on the amount of money that undercover agents bring to the table in a “sting” operation violates the separation of powers doctrine. We agree that if the executive branch had the unilateral power to directly and automatically ratchet up a sentence through these means, one might then argue that such power could constitute the sort of threat to the “authority and independence” of the judicial branch that the Supreme Court referred to as constitutionally infirm in Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 659-60, 102 L.Ed.2d 714 (1989).
In this case, however, we do not find the “undue accretion of power to the Executive branch” alleged by Boudreaux, because the district court clearly retained the authority to find that the amount of money brought to the table was not legitimately part of the laundering conspiracy and was not, therefore, “relevant conduct.” Although the Guidelines state that “relevant conduct” of a defendant must be considered in calculating a sentence, the Guidelines leave the judge with enough discretion to determine, for example, whether the conduct in question was “counseled, commanded, induced, procured, or willfully caused” by the defendant. U.S.S.G. § 1B1.3, comment, (n. I).[15]
In this case, the district court correctly found that the money brought to the table satisfied the relevant conduct test. Given different facts, the district court would not be bound to reach the same conclusion. For example, in the hypothetical scenario raised by the defendant in which the government arbitrarily brought millions of dollars to the table to the surprise of the defendant, the judge would be able to exclude that money under the Guidelines. The district court judge is not required to automatically enhance a defendant’s sentence simply because the government agents choose to bring a certain amount of money to the table. The judge must make factual findings that the money brought to the table is “relevant” to the crime.[16] Given the court’s ample discretion *118 to check the influence of the executive branch in sentencing determinations, we find no separation of powers violation.
With respect to the alleged due process violation of defendant Richardson,[17] it would be difficult to conclude that the government unfairly manipulated the amount of money involved in the “sting” operation, when the evidence shows that Richardson repeatedly asked for larger sums to launder, and suggested additional laundering scenarios.[18] In United States v. Holland, No. 89-5427 (4th Cir. Aug. 3, 1990) [911 F.2d 725 (Table) ],[19] the Fourth Circuit found no due process violation where the government selected the amount of drugs to sell in a “reverse sting” operation, where “the defendants freely decided to accept th[e] negotiated amount_” Because they did so, the court held that they “must now face the attendant consequences of that act.” Id. at 7.
Boudreaux, similarly, demonstrated an affirmative desire to launder the money presented to him, in a series of transactions, by the government agents. The record is replete with evidence that Bou-dreaux continually urged the agents to invest greater sums of money, suggested additional laundering scenarios to enlarge the operation, and initiated calls to expedite the receipt of funds.[20] Given the defendants’ knowledge and acceptance of the amount of funds involved in the laundering conspiracy, we find no violation of due process in the inclusion of this amount for sentencing purposes.
V.
For the foregoing reasons, the sentences imposed by the district court are in all respects AFFIRMED.

. Richardson alleges that his intent was to "rip off" the government agents rather than to launder the money.

. The district court assigned to Richardson a total offense level of 21 with a criminal history category of I, which, under the Guidelines, *115 translates into a sentence ranging from 37 to 46 months.

. Under the Guidelines, a minor participant means "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment, (n. 3).

. The fact that the PSI and the prosecution recommended that the district court find Richardson’s participation to be minor does not compel the court to make such a finding. See U.S.S.G. § 6Bl.l(b).

. Count Two of the indictment to which Richardson pleaded guilty alleged that Richardson and his co-defendants were engaged in the charged conspiracy from January 7, 1989, to and including April 13, 1989.

. The Guidelines state that ‘‘[t]he amount of money involved is included as a factor because it is an indicator of the magnitude of the criminal enterprise, and the extent to which the defendant aided the enterprise.” U.S.S.G. § 2S1.1, comment, (backg'd.).

.Our analysis of this issue necessarily takes into account the "relevant conduct” provisions of the Guidelines. Section 2Sl.l(b) of the Guidelines specifically characterizes the value of funds involved in money laundering offenses as a "specific offense characteristic[ ]." Section lB1.3(a) of the Guidelines states that "specific offense characteristics ... shall be determined on the basis of ... all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable....” In the commentary to this section, the Guidelines state that "[cjonduct 'for which the defendant would be otherwise accountable,’ ... includes conduct that the defendant counseled, commanded, induced, procured, or willfully caused.” U.S.S.G. § 1B1.3, comment, (n.l).

. On January 26, 1989, Fryar received $225,000 from government agents. Fryar then gave the money to Richardson and Richardson wired the money for him.

. Richardson told the agents on April 13, 1989, the date of the second transaction, that he had helped Fryar launder $225,000. Although he contends that he was merely "puffing," he also admits in his appellate brief that he later became aware that the $225,000 was, indeed, laundered money. Moreover, according to the PSI, Richardson believed the funds were drug proceeds as early as April 4, 1989.

. See U.S.S.G. § 1B1.3, comment, (n. 1(e)).

. Fryar enlisted Richardson to act as his runner to continue Fryar’s laundering activities after Fryar was arrested, on or about March 31, 1989. On April 13, 1989, Richardson showed up at a pre-designated location to pick up additional funds for Fryar. At this meeting, the government agents presented $225,000 to Richardson for laundering purposes.

.See U.S.S.G. § 1B1.3, comment, (n. 1). We also note the analogous situation involving the distribution of controlled substances, in which the question arises whether the weight under negotiation in an uncompleted distribution should be used to calculate the applicable amount for sentencing purposes. The Guidelines clearly articulate that it should, unless the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount. U.S.S.G. § 2D1.4, comment, (n. 1). We believe that the same policy considerations dictate that the amount of funds under negotiation in a laundering transaction may be used to calculate the defendant’s sentence.

. The Ehret court based its holding on 18 U.S.C. § 3553(c)(1).

. Boudreaux explicitly raises issues of due process and separation of powers violations. While Richardson at best raises the issue of due process by implication, we address the argument squarely for the sake of thoroughness.

. Under the Guidelines, such conduct must be considered in sentencing if it "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense ...” or if it was otherwise in furtherance of that offense. U.S.S.G. § lB1.3(a)(l).

.The Guidelines state that where "the conduct was neither within the scope of the defendant’s agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant’s offense level_" U.S.S.G. § 1B1.3, comment. (n. 1).

. Richardson argues that “[t]he Government in its sole discretion could have put an additional $1 million, $2 million, or $3 million dollars in front of the gentlemen ... which would effect the Guidelines_” We infer this to be a due process argument. See supra note 14.

. Although this court can envision a theoretical scenario in which a due process violation could occur, the facts of this particular case reveal no constitutional infirmity.

. Although this case has no precedential value under the rules of the Fourth Circuit, we find the logic of the opinion persuasive.

. Boudreaux implies that because the government initiated the "criminal enterprise” in his case — by approaching Boudreaux with a proposal to establish a laundering operation — the status of the enterprise differs from that contemplated by U.S.S.G. § 2S1.1, comment, (backg’d.). See supra note 6. He contends, therefore, that under the Guidelines themselves, the amount of funds contributed by the government to the “sting” operation should not be included in sentencing considerations. We disagree with Bou-dreaux’s factual premise that the operation did not constitute a "criminal enterprise” under the Guidelines, based upon his active and affirmative role in orchestrating the laundering operation, and in repeatedly soliciting and laundering additional funds.